# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

PATRICIA WEST, as legal guardian of
LAQUINTON K. WEST, and
TERESA HARPER, as legal guardian of
CLINTON HARPER,
    Plaintiffs,

v.                                                         Case No. 2:15-cv-553-WKW-DAB

JANSSEN
PHARMACEUTICALS, INC.,
    Defendant.

## REPORT AND RECOMMENDATION

This matter is before the court following oral argument conducted April 19, 2017, on Plaintiffs' *Daubert* motions (Docs. 64, 107), Defendant's *Daubert* motions (Docs. 69, 73, 75, 80, 82, 84), and Defendant's motions for summary judgment (Docs. 66, 78).

The case presents product liability claims initiated by two Plaintiffs, Patricia West, as legal guardian of Laquinton K. West, and Teresa Harper, as legal guardian of Clinton Harper, against Defendant, Janssen Pharmaceuticals, Inc.,[1] concerning Risperdal, a prescription medication used to treat certain mental health conditions. In their pleadings and at the hearing held April 19, 2017, Plaintiffs conceded Defendant is entitled to summary judgment on their claims for breach of express warranty, breach of implied warranty of fitness for a particular purpose, and civil conspiracy. (Doc. 147 at 2, n. 1; 149 at 2, n. 1; 172 at 8). Accordingly, the undersigned recommends the Court **grant in part** the motions

---

[1] Plaintiffs' initial complaint sued Janssen Pharmaceuticals, Inc. also known as Ortho-McNeil-Janssen Pharmaceuticals, Inc. and Ortho-McNeil Pharmaceutical Products, Inc.; Janssen, LP formerly known as Janssen Pharmaceutical Products LP; Johnson & Johnson; Janssen Research and Development, LLC, formerly known as Johnson & Johnson Research and Development, LLC; Dana Michele King; Preston Jerome Byrd; Patty Mims Funkhauser; Mindy L. Basquin; and John Does 1–50. (Doc. 1-13). Janssen Pharmaceuticals, Inc. is the only remaining Defendant in the case.

for summary judgment (Docs. 66, 78) in favor of Defendant Janssen Pharmaceuticals, Inc. and against Plaintiffs on those three claims.

As for the remaining claims asserted under Alabama's Extended Manufacturer's Liability Act (AEMLD), for negligence, wantonness, breach of implied warranty of merchantability, fraud, and negligent misrepresentation, the undersigned recommends the Court **sever** the claims of Patricia West and Teresa Harper. It is further recommended the Court **deny without prejudice** the remaining claims in the summary judgment motions and all *Daubert* motions and direct that the parties may refile *Daubert* motions and/or dispositive motions on any of the remaining claims as it relates to the individual Plaintiff in the respective Plaintiff's case within 30 days from entry of the Order on this Report.

**I.     JURISDICTION**

Janssen Pharmaceuticals, Inc. ("Janssen")[2] removed the case to this court pursuant to 28 U.S.C. § 1332 on the basis of diversity of citizenship and an amount in controversy in excess of seventy-five thousand dollars.[3] (Doc. 1). Plaintiffs dismissed the individual Defendants, some of whom were non-diverse. (Doc. 13). The only remaining Defendant is Janssen Pharmaceuticals, Inc. The parties do not contest personal jurisdiction or venue, and the court finds sufficient information of record to support both. *See* 28 U.S.C. § 1391. On January 5, 2017, the above-styled matter was referred to the undersigned for recommendation on all pretrial matters by United States District Chief Judge William K. Watkins. (Doc. 62); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz*, 447 U.S. 667 (1980); *Jeffrey S. v. State Bd. of Educ. of State of Ga.,* 896 F.2d 507 (11th Cir. 1990).

**II.    LEGAL STANDARD**

---

[2] Effective December 31, 2007, Janssen Pharmaceutica, Inc. changed its name to Ortho-McNeil-Janssen Pharmaceuticals, Inc. As a result of reorganization, Janssen LP was canceled. On June 22, 2011, Ortho-McNeil-Janssen Pharmaceuticals, Inc. changed its name to Janssen Pharmaceuticals, Inc. (Doc. 1 at 1, n.1).

[3] Defendant acknowledges that each Plaintiff meets the jurisdictional amount in controversy for purposes of diversity jurisdiction. (Doc. 1 at 3, n.5).

"Under Rule 20 of the Federal Rules of Civil Procedure, people may join in one action as plaintiffs if they (1) assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, **and** (2) any question of law or fact common to all plaintiffs will arise in the action." *Weatherly v. Alabama State Univ.*, No. 210CV192-WHA, 2010 WL 1753190, at *2 (M.D. Ala. Apr. 30, 2010), *aff'd*, 728 F.3d 1263 (11th Cir. 2013) (emphasis added). Although Plaintiffs may join their claims in one action if they meet both criteria of Rule 20, district courts may "sever any claim against any party." Fed. R. Civ. P. 21.

In this Circuit, district courts are granted broad discretion when considering whether to sever claims under Rule 21 and may take into consideration factors such as judicial economy, case management, prejudice to the parties, and fundamental fairness. *See In re Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1367 (11th Cir. 2010) (affirming district court's decision to sever based on case management concerns); *Tillis v. Cameron*, No. 1:07-CV-0078-WKW, 2007 WL 2806770, at *5 (M.D. Ala. Sept. 25, 2007) ("Whether severance would facilitate settlement or judicial economy is among the factors a court may examine while determining whether to sever the claims," as well as consideration of "the convenience of the parties, avoiding prejudice, promoting expedition and economy, and the separability of law and logic."); *Foster v. Auburn Univ. Montgomery*, No. 2:11–cv–503–WHA–CSC, 2011 WL 3875623, at *4 (M.D. Ala. Sept. 1, 2011) ("[A] court's decision to sever parties under Rule 21 should be tempered by the possibility of prejudice to the severed party."); *Acciard v. Whitney*, No. 2:07–cv–476–UA–DNF, 2008 WL 5120820, at *1 (M.D. Fla. Dec. 4, 2008) ("Courts are given discretion to decide the scope of the civil action and to make such orders as will prevent delay or prejudice."). "[C]ourts have considerable discretion to deny joinder when it would not facilitate judicial economy and when different witnesses and documentary proof would be required for plaintiffs' claims." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 522 (5th Cir. 2010).

The central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits. *Alexander v. Fulton County*, 207 F.3d 1303, 1323

(11th Cir. 2000) overruled on other grounds, *Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003)). The purpose of the Rule is to entertain "the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). Although the preconditions for permissive joinder are construed generously to permit the broadest scope of action commensurate with traditional notions of justice and fair play, the court's discretion to sever parties based on misjoinder is equally as broad. *See Alexander*, 207 F.3d at 1323. Rule 20(b) and Rule 42(b) vest in the district court the discretion to order separate trials or make such other orders as will prevent delay or prejudice. *Id.* "All logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Id.* The determination of whether the situation constitutes the same transaction or occurrence for purposes of Rule 20 is determined on a case by case basis. *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).

The transactional test requires that, to be joined, parties must assert rights, or have rights asserted against them, that arise from related activities – a transaction or an occurrence or a series of such. "In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case by case approach is generally pursued. No hard and fast rules have been established under the rule." *Id.* at 1333 (internal citation omitted). Courts look at each case individually to determine whether the claims are logically related, thereby allowing "all reasonably related claims for relief by or against different parties to be tried in a single proceeding." 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE 2d § 1653. Based on the evidence of record, including the expert reports, it has become apparent that the Plaintiffs' claims are not reasonably related or properly joined and joinder of the claims does not promote efficiency.

### III. BACKGROUND FACTS

Patricia K. West ("Plaintiff West") is the mother and legal guardian for her son, Laquinton K. West ("West"). (Doc. 1-13, ¶ 4). Teresa Harper ("Plaintiff Harper") is the mother and legal guardian for her

4

son Clinton Harper ("Harper").  *Id.*  Plaintiff West and Plaintiff Harper (collectively "Plaintiffs") filed this lawsuit against Janssen related to the design, manufacture, sale, marketing, advertising, promotion, and distribution of Risperdal and generic risperidone.[4]  *Id.*, ¶ 1.  Plaintiffs allege that both West and Harper ingested Risperdal[5] and suffered injuries as a result, including gynecomastia,[6] abnormal development of breasts in males.  *Id.*, ¶ 2–3.

West was born January 19, 1983.  (Doc. 16-2; 104-2 at 35:2).  He was 32 years old when this lawsuit was initiated in 2015.  He was first diagnosed with autism when he was two years old.  (Doc. 104-2 at 34:18–24).[7]  Plaintiff West testified her son was first prescribed Risperdal by Dr. Love at the Vaughn Clinic.[8]  (Docs. 104-2 at 30:22–31:2; 129-1 at 47:14–48:14).  West first saw Dr. Mathisen in 1995 when he was 12 years old, but Dr. Mathisen did not prescribe Risperdal at that time.[9]  (Doc. 129-3 at 81:7–16).  Dr. Mathisen first prescribed Risperdal for West in October 2000 for autism and obsessive compulsiveness.  *Id.* at 90:15–92:23.  West was 17 years old.[10]  *Id.*  Dr. Mathisen testified that West was physically fully developed, at Tanner Stage V, at that time.  (Doc. 152-1 at 367:3–369:9).  The last time Dr. Mathisen saw West was January 19, 2006, (Doc. 129-3 at 101:19–103:9), and the last risperidone prescription written by Dr. Mathisen that was filled by West was in April 2007.  *Id.* at 120:6–11.

---

[4] The case was filed in state court, but removed to this court by Defendants.  (Doc. 1).

[5] The Complaint uses the term Risperdal to refer both to brand-name Risperdal and generic risperidone.  (Doc. 1-13, ¶ 1).

[6] *See* (Doc. 88-2).

[7] Dr. Mathisen testified West presented at the age of 12 with a history of autism since the age of 4 that was initially diagnosed at the Vaughn Clinic.  (Doc. 129-3 at 81:7–21).

[8] Plaintiff West testified her son was prescribed Risperdal by Dr. Love at some time between the ages of six and ten, *see* (Docs. 104-2 at 30:22–31:2; 129-1 at 47:14–48:14), but the first pharmacy records show a prescription for Risperdal being filled in June 2002 when he was 19 years old.  (Doc. 104-4 at 4).

[9] Plaintiff West submitted a declaration to support her opposition to Defendant's motion to sever stating: "In the 1990s, Laquinton was prescribed Risperdal by Dr. Jan Mathisen.  Laquinton was approximately 12 years old when he started taking Risperdal."  (Doc. 16-2, ¶ 5).  Dr. Mathisen's records, however, reflect he first prescribed Risperdal for West in October 2000, which was approximately three months prior to West turning 18 years old.  (Doc. 129-3 at 90:15–92:23).

[10] Citing to 21 C.F.R. § 201.57 (effective until June 29, 2006), Defendant argues that FDA regulations during the period of West's use of brand-name Risperdal defined "pediatric" use to include children up to 16 years of age.  (Doc. 79 at 4, n.6).

Dr. Daniel Mejer prescribed Risperdal and generic risperidone for West starting in July 2006 and continuing into October 2015. (Docs. 104-6 at 97:10–16; 104-5 at 6–13). The generic risperidone became available beginning in 2008. (Doc. 104-7 at 165:3–11). Dr. Shaffer prescribed risperidone from 2008 to 2011. (Doc. 104-7 at 31:21–32:1). Plaintiff West testified the first time she observed her son's symptom of swelling of the chest was in July 2013. (Doc. 104-2 at 184:16–20). West was diagnosed with gynecomastia on September 19, 2013, at the age of thirty.[11] (Doc. 104-11 at 3–4). Pharmacy records show West was prescribed generic risperidone not manufactured by Janssen from October 2012 through July 2013. (Docs. 104-5 at 6–8; 93-2 at 2–8). Even after the lawsuit was filed, records show West was prescribed risperidone by Dr. Hale and nurse practitioner Jodie Shedd in early 2016. *Id.* at 13–14. Additionally, Plaintiff West testified in July 2016 that West was still taking generic risperidone at that time. (Doc. 104-2 at 78:21–79:1).

Harper was born June 19, 1990. (Doc. 16-1). He was four and one-half years old when he was diagnosed with autism. (Doc. 111-2 at 132:15–18). He first saw Dr. Jan Mathisen in 1995. (Doc. 111-3 at 18:15–17). Harper started taking Risperdal, which was prescribed by Dr. Mathisen, sometime between 1995 and 1996. *Id.* at 18–19. He would have been 5 or 6 years old. Dr. Hall prescribed Risperdal to Harper from March to November 2000. (Doc. 111-6 at 56–57, 59–68; Doc. 111-7 at 3). It appears that November 2000 was the last time Harper took Risperdal. (Doc. 111-2 at 299:3–12). On January 7, 2001, Dr. Abdul-Latif, a pediatrician and pediatric endocrinologist, diagnosed Harper with "some evidence of gynecomastia in his chest." (Doc. 111-8 at 3). Dr. Abdul-Latif's examination revealed Harper, who was ten years old at the time, was a Tanner Stage I prepubescent male. *Id.* On August 31, 2016, Dr. Maddux diagnosed Harper with gynecomastia. (Doc. 127-13 at 3).

## IV. *DAUBERT* MOTIONS

---

[11] The records of Montgomery Family Medicine reflect West was seen for "swelling on left anterior upper anterior chest wall around the nipple of 10 months duration progressively increasing in size." (Doc. 104-11 at 3).

Plaintiff challenges defense experts, Janet Arrowsmith, M.D., and Elias G. Chalhub, M.D. (Docs. 64, 107). Dr. Arrowsmith is being offered as a regulatory expert regarding matters related to the Food and Drug Administration (FDA) and labeling of medications. Dr. Chalhub opines on pediatric neurology matters and drug labeling. Defendant also relies on the expert opinions of Dr. Glenn Braunstein (Doc. 102-5), and Dr. T. Brooks Vaughan, III (Doc. 104-18). These latter two experts are not *Daubert* challenged by Plaintiff.

Defendant challenges Plaintiffs' experts, Dr. Michael Freeman, Dr. Elizabeth Naftalis, and Dr. Laura Plunkett. (Docs. 69, 73, 75, 80, 82, 84). Defendant seeks to exclude the specific and general causation opinions of Drs. Freeman and Naftalis. Regarding Dr. Plunkett, Defendant challenges Dr. Plunkett's opinions regarding Risperdal label adequacy for the period of 1994 through October 2006 and any general causation opinions.

## V.  DISCUSSION

Plaintiffs contend their claims arise out of a series of transactions or occurrences and there are common questions of law and fact as to each Plaintiff.[12] (Doc. 16, ¶ 2). On the first factor, Plaintiffs contend the series of transactions or occurrences are comprised of the Defendant's marketing of Risperdal to children, adolescents, and minors in Alabama prior to 2006 in contraindication to FDA recommendations, coupled with the fact that both West and Harper were prescribed Risperdal during that time frame by Dr. Mathisen and suffered similar injuries as a result. (Doc. 16, ¶ 10).

On the second requirement, Plaintiffs state their causes of action against Janssen are the same, and thus there are common questions of law. *Id.* First, they claim Janssen gave inadequate warnings to their physicians, including Dr. Mathisen, about the risks and side effects of Risperdal, and second they claim Janssen knowingly and willfully marketed Risperdal for children/adolescents/minors without any

---

[12] Janssen previously filed a motion to sever (Doc.11) which Plaintiffs opposed (Doc. 16). Based on the information contained in the record including the arguments, declarations, and authorities presented by the parties, the court exercised its discretion to deny the request to sever at that time. (Doc. 23).

7

approved indication from the Federal Food and Drug Administration ("FDA"). *Id.* Plaintiffs claim that Defendant engaged in such marketing even though the FDA specifically rejected an approved indication for pediatric use before 2006. *Id.* Plaintiffs claim both were minors who were prescribed Risperdal before 2006. *Id.*, ¶ 7. Plaintiffs point to West and Harper's treatment with Dr. Mathisen, their ingestion of Risperdal as minors, the same inadequate warning language, and their development of gynecomastia as evidence of common questions of fact between both West and Harper to support their joinder as Plaintiffs. Relying on these facts, Plaintiffs urge their claims "stem from the same core allegations." *Id.*, ¶ 11 (quoting *Alexander*, 207 F.3d at 1324).

Defendant, on the other hand, submits there are substantial differences between West and Harper that establish their claims arise out of different events and occurrences. (Doc. 11, ¶ 3). Specifically, Defendant points to West and Harper's different ages, unique medical histories, and separate prescribing decisions made years apart to demonstrate joinder of these claims is improper. While Defendant acknowledges there may be common questions of law or fact, Defendant states that Plaintiffs cannot establish they satisfy the same transaction or occurrence requirement to support joinder. *Id.*, ¶¶ 9–11.

The dissimilarities in the Plaintiffs' claims have become more apparent as discovery and expert testimony have developed. Harper began taking Risperdal as a five or six-year old and was always a minor while taking the medication. In contrast, West did not begin taking the medication until he was almost eighteen years old and was physiologically an adult. The significance of this difference is highlighted by the expert causation testimony related to the "theoretical" mechanism for Risperdal to "cause" gynecomastia being absent in prepubescent Tanner Stage I children such as Harper. Further, the consequence of Risperdal not being approved for pediatric use takes on a much different meaning in the two cases.

Additionally, West took the medication for a much longer period of time from 2000 to 2016, whereas Harper took the mediation from 1995 or 1996 until 2000.[13] West was prescribed and took the generic risperidone since 2009, whereas Harper never took the generic medication. Moreover, West was taking generic risperidone not manufactured by Janssen at the time his symptoms manifested. Harper developed symptoms and was diagnosed with a form of gynecomastia when he was ten years old.[14] West did not develop symptoms of breast enlargement until he was thirty years old. The causation analyses for West and Harper differ significantly given the differences in their ages and physiological development in relation to when the medicine was prescribed, how long they took it, the effect the medicine had on them, and when they began to develop symptoms. Indeed, the Court's efforts to understand and analyze the challenged expert opinions was greatly impaired by the need to separate the opinions and supporting scientific studies and rationales relied on by the witnesses as to the different plaintiffs.

Courts in this Circuit have recognized "the touchstone of the Rule 20 joinder/severance analysis is whether the interests of efficiency and judicial economy would be advanced by allowing the claims to travel together, and whether any party would be prejudiced if they did." *Fisher v. Ciba Specialty Chemicals Corp.*, 245 F.R.D. 539, 542 (S.D. Ala. 2007). The critical differences between the claims asserted by Plaintiffs outweigh the similarities between the cases, and the court finds trying the cases together would thus be inefficient and confusing for both the Court and the jury.

A central theme in Plaintiffs' cases is Defendant's marketing of Risperdal to children/adolescents/minors. As discussed above, West was nearly 18 years old when he began to take Risperdal, compared to Harper's ingestion of the medication as a prepubescent male.

---

[13] The records reflect Harper last took Risperdal in 2000, *see* (Doc. 111-2 at 299:3–12); Plaintiff's brief states Harper took Risperdal no later than 2004. (Doc. 127 at 12).

[14] Defendant disputes there was a diagnosis of gynecomastia at all. (Doc. 172 at 37).

Another theory of liability Plaintiffs argue is the inadequacy of the Risperdal label. Significantly, the Risperdal label changed in 2006, to include additional language regarding gynecomastia.[15] The import of this change is Harper's ingestion of Risperdal and development of symptoms occurred prior to the label change, whereas West's development of symptoms did not occur until 2013, seven years after this label change in 2006.

Here, West's use of the generic risperidone would necessitate a different analysis—not relevant to the Harper case—to potentially hold Janssen liable for West's use of the generic medication. While a brand-name manufacturer may be held liable under Alabama law for a plaintiff's use of a generic medication, *see Wyeth, Inc. v. Weeks*, 159 So. 3d 649, 677 (Ala. 2014),[16] presentation at trial of the issue would differ between the Plaintiffs because Harper was never prescribed or took the generic medication.[17]

Plaintiffs point to West and Harper's overlapping treatment with Dr. Mathisen to support their argument the Plaintiffs' claims flow from the same series of transactions or occurrences. Notably, however, the similarity in treatment between West and Harper ends there. Other than the potential one-month overlap in treating both West and Harper in October and November 2000, no other prescribing physicians are the same. In fact, there would be no other common fact witnesses. Dr. Mathisen is only one treating physician amongst many who treated and prescribed Risperdal or risperidone. Indeed, West

---

[15] In October 2006 Janssen changed the language of the Risperdal label by adding certain information and deleting other information. The revised language (with the additions in bold) stated:
> As with other drugs that antagonize dopamine DR2R receptors, risperidone elevates prolactin levels and the elevation persists during chronic administration. **Risperidone is associated with higher levels of prolactin elevation than other antipsychotic agents. …Glaactorrhea, amenorrhea, gynecomastia and impotence have been reported in patients receiving prolactin elevating compounds**.

(Doc. 129 at 15).

[16] "Under Alabama law, a brand-name-drug company may be held liable for fraud or misrepresentation (by misstatement or omission), based on statements it made in connection with the manufacture of a brand-name prescription drug, by a plaintiff claiming physical injury caused by a generic drug manufactured by a different company." *Wyeth, Inc.*, 159 So. 3d at 676.

[17] Defendant asserts that the theory enunciated under *Weeks* is the only theory of liability available to Plaintiff West because of his use of generic risperidone. (Doc. 152 at 4, n. 9). Defendant further argues, however, that Plaintiff never pled this theory of liability. *Id.* at 4, n. 10.

and Harper were prescribed multiple prescriptions, written at different times by different physicians and in different doses at different physiological stages of their lives. West was physically an adult when he first started taking the medication and was an adult who had been taking the generic risperidone for many years before any symptoms manifested whereas Harper was a prepubescent male when he was first prescribed Risperdal and began to develop symptoms.

Considering the impact the medication had on West and Harper respectively and the specific basis for their prescribing physicians' decisions to recommend Risperdal based on their unique medical histories including the effect of other medications they were taking, it appears that Plaintiffs' claims do not arise out of the same transaction, occurrence, or series of transactions or occurrences. Moreover, given the complex expert testimony intended to be offered by both sides and the different fact testimony, the court finds that trial of the cases together would be more convoluted and confusing, rather than efficient. As the bulk of discovery has been completed, the court further finds that the parties would not be prejudiced by severance of the Plaintiffs' claims at this juncture. Documents and other evidence may be used in both cases where such use is appropriate.

As outlined above, the numerous experts involved and varying opinions illustrate the potential confusion that likely will result keeping these Plaintiffs' claims together. Indeed, the court's *Daubert* review was hampered by combined consideration, and the jury would likely be hopelessly confused in trying to sort out the differing courses of treatment, diagnoses, and child versus adult causation theories. Proceeding separately for pretrial and trial purposes will allow for a clearer presentation of the evidence with the experts' theories and opinions tailored to each particular Plaintiff.

## VI. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, it is the **RECOMMENDATION** of the Magistrate Judge that the Court **SEVER** the claims of West and Harper and direct that each Plaintiff proceed separately in his own respective case.

It is further **RECOMMENDED** if this Report and Recommendation is adopted, the Clerk should be directed to open a new separate file and docket for Harper, using the same judge assignments as the present case. Because Janssen removed the case to this Court, it is also respectfully **RECOMMENDED** that Janssen be required to pay the separate filing fee.

It is further **RECOMMENDED** that the court **GRANT IN PART** the motions for summary judgment (Docs. 66, 78) in favor of Defendant, Janssen Pharmaceuticals, Inc., and against Plaintiffs, Patricia West as legal guardian of Laquinton K. West, and Teresa Harper, as legal guardian of Clinton Harper, as to Plaintiffs' claims for breach of express warranty, breach of implied warranty of fitness for a particular purpose, and civil conspiracy as Plaintiffs have conceded Defendant is entitled to judgment in their favor on those three claims. *See* (Doc. 147 at 2, n. 1; 149 at 2, n. 1; 172 at 8).

On the pending *Daubert* motions (Docs. 64, 107, 69, 73, 75, 80, 82, and 84) and for the claims remaining in the summary judgment motions (Docs. 66, 78), it is further **RECOMMENDED** that the Court **deny without prejudice** the pending motions and direct that the parties may refile *Daubert* motions and/or dispositive motions on any of the remaining claims as it relates to the individual Plaintiff in the respective Plaintiff's case within **30 days** from entry of the Order on this Report. It is further **RECOMMENDED** the Court should direct that, if refiled, the *Daubert* motions and summary judgment motions should be tailored to each particular Plaintiff with citation to evidence and authority that relates to that particular Plaintiff.

It is **ORDERED** that the parties shall file any objections to this Report and Recommendation on or before **August 21, 2017**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in

the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 4th day of August, 2017.

_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE